# MCI TELECOMMUNICATIONS CORPORATION, Plaintiff,

## v.

**H. Russell FRISBY, Jr., Chairman, Claude M. Ligon, Commissioner, E. Mason Hendrickson, Commissioner, Susanne Brogan, Commissioner, Gerald L. Thorpe, Commissioner, of the Public Service Commission of Maryland**

### and

**Bell Atlantic–Maryland, Inc., Defendants.**

### No. S–97–3998.

United States District Court, D. Maryland.

March 25, 1998.

---

Charles P. Scheeler, Carville B. Collins, Piper & Marbury, Baltimore, MD, Thomas F. O'Neill, Jr., Matthew B. Pachman, MCI Telecommunications Corp., Washington, DC, for plaintiff.

Bryan G. Moorhouse, Susan Stevens Miller, Maryland Public Service Commission, Baltimore, MD, for defendant Public Service Commission.

James P. Garland, Miles & Stockbridge, PC, Baltimore, MD, David A. Hill, Bell Atlantic, Arlington VA, for defendant Bell Atlantic–Maryland.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case is before the Court on Defendants' motions to dismiss. The motions have been fully briefed, and no oral argument is deemed necessary. Local Rule 105.6 (D.Md.). Because the Court concludes that the Eleventh Amendment is a bar to federal jurisdiction, it will grant the motion to dismiss of defendant Public Service Commission of Maryland Commissioners H. Russell Frisby, Jr., Claude M. Ligon, E. Mason Hendrickson, Susanne Brogan and Gerald L. Thorpe ("State Commissioners"). Furthermore, because MCI Telecommunications Corporation ("MCI") does not seek any affirmative relief against Bell Atlantic–Maryland, Inc. ("BA–MD"), see MCI Compl. at 11, the Court will grant BA–MD's motion to dismiss as well.

### I. Factual Background

#### A. The Telecommunications Act of 1996

The Telecommunications Act of 1996 ("the Act") was enacted to promote competition in local telecommunications markets. To open local telephone markets to competition, § 251 of the Act imposes a variety of duties upon incumbent local exchange carriers ("local carriers"), such as BA–MD. 47 U.S.C. § 251. Among their § 251 duties, local carriers must not prohibit, or impose unreasonable or discriminatory conditions or limitations on, the resale of their telecommunications services. § 251(b)(1); § 251(c)(4)(B). More specifically, local carriers must offer new entrants, at wholesale rates, any telecommunications service local carriers offer their own retail customers. § 251(c)(4)(A). The anticipated result is that non-local carriers, such as MCI, will be able to enter the local market, offer-

ing competitive local telephone service by reselling those discounted telecommunications services to their own customers. Section 251 imposes an additional duty on local carriers to negotiate, in accordance with § 252, the terms and conditions of agreements to fulfill their § 251 duties. § 251(c)(1).

Section 252 sets forth the procedures for negotiation, arbitration, and approval of agreements. The parties may voluntarily negotiate agreements for, among other things, telecommunications services. § 252(a). Any party to the negotiation may petition a State commission to arbitrate unresolved, open issues. § 252(b). While the parties may negotiate an agreement without regard to local carriers' § 251(b) and (c) duties, the State commission, in resolving open issues under arbitration, is bound by the requirements of § 251. Also, in resolving open issues, the State commission must establish any rates for telecommunications services according to § 252(d). Section 252(d)(3) requires a State commission to determine wholesale rates of telecommunications services on the basis of retail rates charged to customers minus avoided costs such as marketing, billing and collection. Once the parties arrive at a negotiated or arbitrated agreement, the agreement must be submitted to the State commission for approval. Once the State commission approves or rejects the agreement, a federal court may review the State commission's findings to determine whether the agreement meets the requirements of §§ 251 and 252. § 252(e)(6).

### B. *MCI. BA–MD and the Maryland Public Service Commission*

In early 1996, MCI and BA–MD entered into voluntary negotiations under § 252(a). Unable to resolve all interconnection issues through negotiation, MCI, on August 27, 1996, petitioned for arbitration under § 252(b). The Maryland Public Service Commission ("the State Commission") issued an arbitration order (No. 73010) on November 8, 1996, binding on MCI as well as other telecommunications carriers. The State Commission intended "to rule on all pending disputed issues that have been brought forward by the parties to be arbitrated." Arb. Order at 6. The State Commission ordered, *inter alia*, "that telecommunications companies may file interconnection agreements in conformance with the findings of this Order." Arb. Order at 39.

One of the State Commission's findings was that "the provision of directory assistance services should be a separately-tariffed charge that BA–MD may impose upon other carriers who require such services." Arb. Order at 29. The arbitration order directed BA–MD "to develop and file such a charge for these services, which shall be subject to acceptance by the Commission." Arb. Order at 29. In compliance with the arbitration order, BA–MD, on September 2, 1997, filed a tariff proposing to establish wholesale rates for, among other services, residential directory assistance service. On October 24, 1997, the State Commission issued a rate order which required BA–MD to charge a residential directory assistance service of $.25 per call ("Rate Order"). That Rate Order is at the center of this controversy.

Invoking jurisdiction under 28 U.S.C. §§ 1331 and 1337, MCI filed suit against BA–MD and the five commissioners of the State Commission, in their official capacities, for declaratory and injunctive relief. MCI claims that the Rate Order violates § 251(c)(4)(B) (which imposes a duty on local carriers not to prohibit or place unreasonable discriminatory conditions or limitations on the resale of telecommunications services) and § 252(d)(3) (which requires State commissions to determine wholesale rates on the basis of retail rates minus avoidable costs).

BA–MD and the State Commissioners each moved to dismiss the complaint, arguing that the federal court lacks subject-matter jurisdiction. First, both defendants argue that MCI's claim is not ripe for federal court review, because there is no interconnection agreement in place as required by § 252(e)(6) of the Act. Second, the State Commissioners argue that the Eleventh Amendment bars suit against them in federal court. Third, both defendants argue that the Johnson Act, 28 U.S.C. § 1342, prohibits the

federal court's exercise of its injunctive powers over the State Commission's rate order.

In its consolidated opposition to the motions to dismiss, MCI sets forth a "hornbook law" preemption argument: the State Commission's Rate Order violates federal law, and, therefore, the federal court has jurisdiction, under the Supremacy Clause, to hear the case. MCI, relying on the *Ex parte Young* doctrine, further argues that the Eleventh Amendment does not bar the action.

## II. *Discussion*

### A.

MCI agrees with Defendants' first argument that this case is not ripe for federal court review under § 252(e)(6) of the Act. Opp. at 12–13. Therefore, the Court need not address that argument.

Discussed more fully below, the heart of this Court's decision is that the Eleventh Amendment bars this suit against the State Commissioners in federal court, notwithstanding the Supremacy Clause.

Because the Court holds that the Eleventh Amendment bars this suit against the State Commissioners in federal court, it need not address the State Commissioners' Johnson Act argument. In addition, the Court need not address defendant BA–MD's Johnson Act argument, because MCI seeks no affirmative relief against BA–MD.

### B.

It is a well-known principle that federal courts are ones of limited jurisdiction. For instance, federal courts may exercise jurisdiction only if Congress confers it by statute. In 28 U.S.C. § 1331,[1] Congress granted federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a general rule, a case arises under federal law, for § 1331 jurisdictional purposes, only if federal law, including common law, regulations, a federal statute or the Constitution, creates the cause of action.[2] This type of jurisdiction is known as federal-question jurisdiction. Even the grant of federal-question jurisdiction has restrictions placed on it. The Eleventh Amendment is one such restriction. The Eleventh Amendment protects a state from suit in federal court by private parties. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Apparently because the federal statute at issue in this case creates a cause of action in § 252(e)(6),[3] both defendants assumed MCI was proceeding with its suit under that cause of action. A § 252(e)(6) cause of action permits federal court review of a State commission's approval or disapproval of interconnection agreements. Both defendants were quick to point out, of course, that MCI's § 252(e)(6) cause of action is not ripe for federal court review because no agreement between BA–MD and MCI is in place.

But MCI does not rely on a § 252(e)(6) cause of action, or any other part of the Telecommunications Act, as a jurisdictional base for federal-question jurisdiction. Rather, MCI argues that its cause of action arises under the Supremacy Clause of the Constitution. To avoid the Eleventh Amendment, MCI relies on *Ex parte Young*, 209 U.S. 123,

---

1. The fact that MCI also invoked jurisdiction under 28 U.S.C. § 1337 does not change the Court's analysis. Section 1337 grants federal courts jurisdiction over actions arising under any Act of Congress regulating commerce against restraints and monopolies. The Telecommunications Act may be such an Act of Congress within the meaning of 28 U.S.C. § 1337, but MCI, in its opposition, argues that its cause of action arises under the Constitution, not the Act. Therefore, § 1337 jurisdiction is not a proper source of jurisdiction. Moreover, the Supreme Court has not distinguished between the "arising under" standards of § 1337 and § 1331. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 n. 7, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

2. Section 1331 has been sharply restricted in cases where federal law does not create an *express* cause of action. *See, e.g., Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

3. § 252(e)(6) provides:

   In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88. L.Ed.2d 371 (1985) ("the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause."). Therefore, according to MCI, federal-question jurisdiction is proper because MCI has a cause of action arising under federal law—that is, the Constitution—and the Eleventh Amendment is not a bar.[4] MCI may well have a sound point under the Supremacy Clause when it argues that a state administrative order conflicts with the dictates of a federal statute. Nevertheless, MCI must contend with the Eleventh Amendment, which is a "real limitation on a federal court's federal-question jurisdiction." *See Idaho v. Coeur d'Alene Tribe of Idaho*, — U.S. —, —, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997).

■ The Supreme Court, in *Ex parte Young*, permitted federal-question jurisdiction over suits against state officials (not the State as the State) when the suit seeks only prospective, injunctive relief to end "a continuing violation of federal law." *Green v. Mansour*, 474 U.S. at 68. The Supreme Court, in essence, created a fiction to avoid the dictates of the Eleventh Amendment to vindicate the federal interest in assuring the supremacy of federal law.[5] In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment did not prevent a suit to enjoin state officials from enforcing a state rate regulation alleged to be in violation of the federal constitution. *Ex parte Young*, 209 U.S. at 123.

At first blush, it would appear that this Court has jurisdiction, because MCI's suit looks like a classic case for application of the *Ex parte Young* doctrine. MCI has alleged that the State Commission officials are engaged in "a continuing violation of federal law" by their issuance of a Rate Order which fails to comply with the §§ 251 and 252 wholesale rate computations. MCI seeks only prospective, injunctive relief. Thus, under a traditional *Ex parte Young* analysis, an equitable remedy might be available in this case, and the Eleventh Amendment would not be a bar to this Court's jurisdiction.

The problem for MCI, however, is the Supreme Court's treatment of *Ex parte Young* in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Supreme Court suggested that when a statute implies that Congress intended that an alternative, specific form of relief be available to enforce compliance with that statute, a court can infer that Congress did not intend the federal court to provide traditional *Ex parte Young* injunctive relief. The statute at issue in *Seminole Tribe*, the Indian Gaming Regulatory Act ("the IGRA"), was passed by Congress under the Indian Commerce Clause. The IGRA imposed on States a duty to negotiate in good faith toward a compact with Indian tribes regarding certain gaming activities. 25 U.S.C. § 2710(d)(3)(A). The IGRA provided an express cause of action for Indians to sue States in federal court to compel performance of that duty. § 2710(d)(7) The Court held the section of the IGRA creating an express cause of action against the States unconstitutional because Congress does not have the power under the Indian Commerce Clause to abrogate the States' Eleventh Amendment immunity. *Seminole Tribe*, 517 U.S. at 47.

Stripped of their express cause of action, the Indians relied on an *Ex Parte Young* cause of action against a state official in federal court to enforce the State's IGRA duty. *Seminole Tribe*, 517 U.S. at 73. The Indians met the traditional *Ex parte Young* requirements: they sued an individual state official (the Governor) and sought only prospective, injunctive relief for a continuing violation of federal law (the duty imposed by

---

4. In its complaint, MCI also alleged that its claim "arises under ... 42 U.S.C. § 1983." Compl. at 2. MCI cannot rely on § 1983 as creating a cause of action against the State Commission officials because the Supreme Court has held that "neither a State nor its officials acting in their official capacities, are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). MCI does not raise a § 1983 claim against BA–MD, a private party.

5. The Supreme Court recently reaffirmed the validity of *Ex parte Young* relief for alleged ongoing violations of federal law. *See Idaho v. Coeur d'Alene Tribe of Idaho*, — U.S. —, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).

IGRA). Nonetheless, the Court did not permit the Indians' suit to proceed in federal court, finding the Indians' situation "sufficiently different from that giving rise to the traditional *Ex parte Young* action." *Id.* Looking at the IGRA, the Supreme Court noted that the State's duty did not stand alone but was part of a larger remedial scheme. The Court determined that Congress intended the comprehensive remedial scheme as an alternative remedy to an *Ex parte Young* action. *Id.* 517 U.S. at 73–74.

▮ Thus, this Court's inquiry into whether it has jurisdiction in this case is narrowly focused on the question of whether Congress intended that the normally available *Ex parte Young* injunctive relief *not* be available to enforce compliance with §§ 251 and 252 of the Act. This Court finds that Congress intended § 251(c)(4)(B) and § 252(d)(3) (the sections MCI asserts are violated by the Rate Order) to be enforced against the state only in an action brought under § 252(e)(6), not through an action based on *Ex parte Young*. Sections 251 and 252 of the Act were written with a view toward ultimate agreements between local and non-local carriers. The Act is an extremely complex, omnibus piece of legislation, enacted after vigorous debate. The sections involved here are closely intertwined, and it is inconceivable to this Court that Congress intended that the sections be ripped out of the context of the agreements that these sections contemplate, for purposes of judicial review. Furthermore, Congress provided an express remedy against a State commission in federal court to enforce compliance with §§ 251 and 252, and a prerequisite of that express remedy is an interconnection agreement. § 252(e)(6). This Court heeds the Supreme Court's advice that "where Congress has prescribed a detailed

remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state official based upon *Ex parte Young*." *Seminole Tribe*, 517 U.S. at 74. Because § 252(e)(6) is an alternative remedy that serves to vindicate federal law in federal court, this Court concludes that Congress intended that the *Ex parte Young* fiction *not* be available to enforce §§ 251 and 252. *See id.* 517 U.S. at 73–75. Thus, MCI cannot rely on the *Ex parte Young* fiction to avoid the Eleventh Amendment. In sum, the Rate Order which MCI alleges violates §§ 251 and 252 must be challenged through the alternative remedy Congress provided in § 252(e)(6).[6] A § 252(e)(6) cause of action is not ripe for review absent an interconnection agreement, as MCI concedes, and an agreement is missing in this case.

### III. *Conclusion*

Based on the foregoing discussion, this Court concludes that this suit against the State Commissioners is barred by the Eleventh Amendment and must be dismissed for lack of jurisdiction. Therefore, the Court will GRANT the Defendant State Commissioners' Motion to Dismiss. Furthermore, in that MCI does not seek any affirmative relief against Defendant BA–MD, the Court will GRANT BA–MD's motion to dismiss, as well. An appropriate order will be entered separately.

### *ORDER*

For the reasons stated in a Memorandum Opinion of even date, it is, by the Court, this 25th day of March 1998, ORDERED:

1. That the motion to dismiss of Defendants H. Russell Frisby, Jr., Claude M. Ligon, E. Mason Hendrickson, Sus-

---

**6.** MCI attempts to sever the Rate Order from the universe of arbitration and § 252 interconnection agreements by stating that the Rate Order "arose from an independent tariff review and approval process." Opp. at 10. By going through the *Ex Parte Young* analysis in this memorandum opinion, the Court does not mean to imply that the Court necessarily agrees with MCI that the Rate Order is severed from the arbitration process. Rather, the Court gives MCI the benefit of assuming that the Rate Order was in

fact a completely independent order from the State Commission's arbitration order which was binding on MCI. Another way of analyzing this case would have been to conclude that the Rate Order, which was indirectly generated by the arbitration order, was in fact part of the arbitration order (even though subsequent thereto) and therefore § 252(e)(6) applies. Therefore, MCI's claim would be unripe; as MCI itself concedes, "Appeals of § 252(b) arbitration orders are simply unripe." Opp. at 13.

anne Brogan, and Gerald L. Thorpe of the Public Service Commission of Maryland BE, and the same hereby IS, GRANTED;

2. That the motion to dismiss of Defendant Bell Atlantic–Maryland, Inc. BE, and the same hereby IS, GRANTED;

3. That Plaintiff MCI's complaint BE, and it hereby IS, DISMISSED, without prejudice, with costs awarded to defendants; and

4. That the Clerk mail copies hereof and of the said Opinion to counsel.