WISCONSIN BELL, INC. d/b/a
Ameritech Wisconsin,
Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF
WISCONSIN, and Cheryl L. Parrino,
Daniel J. Eastman, and Joseph P.
Mettner, Defendants.

Wisconsin Bell, Inc. d/b/a Ameritech
Wisconsin, Plaintiff,

v.

Public Service Commission of Wisconsin, and Cheryl L. Parrino, Daniel J.
Eastman, and Joseph P. Mettner, in
their official capacities as members of
the Commission,

and

MCI Telecommunications Corp. and
MCI Metro Access Transmission
Services, Inc., Defendants,

and

United States of America, Intervenor.

MCI Telecommunications Corp., and
MCI Metro Access Transmission
Services, Inc., Plaintiffs,

v.

Wisconsin Bell, Inc. d/b/a Ameritech
Wisconsin, Public Service Commission of Wisconsin, and Cheryl L. Parrino, Daniel J. Eastman, and Joseph
P. Mettner, in their official capacities
as members of the Commission, Defendants,

and

United States of America, Intervenor.

Wisconsin Bell, Inc. d/b/a Ameritech
Wisconsin, Plaintiff,

v.

TCG Milwaukee, Inc., Public Service
Commission of Wisconsin, Cheryl L.
Parrino and Joseph P. Mettner, Commissioners of the Public Service Commission of Wisconsin, and Time War-

ner Communications of Milwaukee,
L.P., Defendants.

Nos. 97–C–566–C, 98–C–11–C,
98–C–153–C, 98–C–366–C.

United States District Court,
W.D. Wisconsin.

July 12, 1999.

Wayne O. Hanewicz, Foley & Lardner, Madison WI, Bradley D. Jackson, Foley & Lardner, Madison WI, for Wisconsin Bell, Inc., plaintiff.

Niles Berman, Wheeler, Van Sickle & Anderson, S.C., Madison WI, for MCI Telecommunications Corp, MCIMetro Access Transmission Ser.

Mary M. Stevens, Public Service Commission, Madison WI, Anthony A. Tomaselli, Quarles & Brady, Madison WI, Michael J. Varda, Staff Attorney, Public Service Commission, Madison WI, Michael J. Varda, Staff Attorney, Public Service Commission, Madison WI, for Public Service Commission of WI, Cheryl L. Parrino, Daniel J. Eastman, Joseph P. Mettner.

Linda M. Clifford, Lafollette & Sinykin, Madison WI, Michael L. Shor, Swidler & Berlin, Washington DC, for U.S. Xchange, L.L.C. (amicus).

Andrea M. Sharrin, U.S. Dept. of Justice, Federal Programs Branch, Washington DC, for Federal Communications (Prop In).

John R. Dawson, Foley & Lardner, Milwaukee WI, for Wisconsin Bell, Inc., Ameritech Wisconsin, defendant.

Kathleen M. Mulligan, Sidley and Austin, Chicago IL, for TCG Milwaukee, Inc.

Peter Gardon, Reinhart, Boerner, et al., Madison WI, for Time Warner Communications.

## OPINION AND ORDER

CRABB, Distict Judge.

The Telecommunications Act of 1996 introduced local telephony to a brave new world of competition. At the same time, it brought the Federal Communications Commission, all the state utility commissions and the federal courts into a new universe of "cooperative federalism." *See* Philip J. Weiser, *Chevron, Cooperative Federalism, and Telecommunications Reform,* 52 Vand.L.Rev. 1, 53–54 (1999). The Supreme Court has remarked that the act's interplay of state and federal authority is "surpassing strange" and that the Congressional "scheme" is decidedly novel, as are "the attendant legal questions, such as whether federal courts must defer to state agency interpretations." *AT & T Corp. v. Iowa Utilities Board,* 525 U.S. 366, —— n. 6, 733 n. 10, 119 S.Ct. 721, 730 n. 6, 733 n. 10, 142 L.Ed.2d 835 (1999). The cases before the court bear out these comments.

All four of the cases before the court are brought under the 1996 act. Two have been consolidated pursuant to Fed. R.Civ.P. 41. All involve challenges to rulings of the Public Service Commission of Wisconsin dealing with the "interconnection" of local telephone carriers in Wisconsin. In all the lawsuits, the commission and its members are defendants.[1] The local carriers are also parties, although they are aligned in various ways; some are plaintiffs (challenging a ruling), some are defendants (supporting a ruling) and one

---

1. The composition of defendant Public Service Commission has changed since these suits were filed, but defendants have not filed any motions for substitution of parties pursuant to Fed.R.Civ.P. 25(d)(I). Because the cases will be dismissed for lack of subject matter jurisdiction and because failure to make a formal motion for substitution does not affect the rights of the parties, *see id.,* there is no need to change the captions of the cases.

as both (supporting a ruling in one case, challenging rulings in others).

With legislation such as the 1996 act, which breaks so much substantive and procedural ground, it is no surprise that other courts and administrative agencies have issued rulings bearing on these lawsuits during the roughly eighteen months since these cases were filed. What is unsettling, particularly in light of the time and resources the parties and the court have devoted to the cases, is that a ruling by the Supreme Court made in the last three weeks has deprived this court of jurisdiction to entertain the cases.

In *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, — U.S. —, 119 S.Ct. 2219, — L.Ed.2d — (1999), the Supreme Court repudiated the doctrine of constructive waiver on which the Court of Appeals for the Seventh Circuit had rested its conclusion that a state commission was not entitled to Eleventh Amendment immunity from suits brought pursuant to the act. *See MCI Telecommunications Corp. v. Illinois Commerce Comm.*, 168 F.3d 315 (7th Cir.1999), *amended*, 1999 WL 447547 (June 23, 1999). The holding in *College Savings Bank* requires defendants' dismissal from all the suits on the ground of immunity. This decision establishing defendants' immunity from suit is especially significant in light of the opinion of the Court of Appeals for the Seventh Circuit in *Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.*, 179 F.3d 566 (7th Cir. 1999). If, after the decision in *MCI*, there had been any question about the need to include state commissions in any kind of federal court action brought under the act, it was answered in *Illinois Bell*. The court confirmed that the presence of a state commission is essential to federal jurisdiction under the Telecommunications Act. In the face of *College Savings Bank*, *MCI* and *Illinois Bell*, I have no option but to dismiss all four lawsuits.

## OPINION

### A. *Eleventh Amendment*

The possibility that the Eleventh Amendment might bring an end to this litigation is not exactly a surprise. On November 27, 1998, over the carriers' united objections, I held that defendants were entitled to Eleventh Amendment immunity. *See Wisconsin Bell, Inc. v. Public Service Comm. of Wisconsin*, 27 F.Supp.2d 1149 (W.D.Wis.1998). In arguing that Wisconsin was not immune to suit under the act, the carriers did not argue that Congress had abrogated the state's immunity or that the state had made an express waiver of its immunity. They relied solely on the concept of constructive waiver. In their view, defendants had chosen to regulate interconnection activities in Wisconsin and by doing so, had consented implicitly to being sued in federal court under the act's provision directing the federal courts to undertake the "review of state commission actions" for compliance with federal law. *See* 47 U.S.C. § 252(e)(6). In support of their assertion that defendants had a true choice not to engage in such cooperative federalism, the local carriers emphasized that Congress had directed the Federal Communications Commission to act whenever a state commission chose not to. *See* § 252(e)(4) (FCC to act if state commission fails to act).

Although I noted that it was arguable whether the doctrine of constructive waiver was still good law, *see Wisconsin Bell*, 27 F.Supp.2d at 1158, I found the doctrine inapplicable in the circumstances of the Telecommunications Act. I agreed with defendants that their participation could not be viewed as a true waiver of Eleventh Amendment immunity given the nature of the legislation, which envisioned the state commissions' continuing to serve as regulators of local telephone carriers, and the long history of such local regulations, extending back at least to the passage of the Communications Act of 1934. Moreover, a careful reading of the act revealed that the FCC backup role was not complete. Un-

der § 252(e)(4) and 47 C.F.R. § 51.801, if a state commission takes no action with respect to a voluntary agreement reached between carriers, the FCC does not review the agreement on behalf of the state commission. It is deemed approved automatically. *See Wisconsin Bell,* 27 F.Supp.2d at 1155–59.

I rejected the local carriers' contention that *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), yielded an alternative basis for jurisdiction. *Ex parte Young* established the rule (often referred to as a legal fiction) that injunctive relief is available to restrain state officials from violating the Constitution even when the state itself is immune from suit under the Eleventh Amendment. Although *Young* itself concerned an alleged constitutional violation, the rule extends to violations of federal statutory law. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("An allegation of an on-going violation of *federal law* where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction.") (Emphasis added.) *See also Marie O. v. Edgar,* 131 F.3d 610 (7th Cir.1997) (*Ex parte Young* action can be brought to vindicate violations of federal statute). The theory of the local carriers was that defendants were violating federal law because they had interpreted and applied the 1996 act improperly. (The United States, as intervenor, and the FCC, as amicus, joined the carriers in arguing that the commission and its members were not entitled to Eleventh Amendment immunity and alternatively, could be sued under *Ex parte Young.*)

At first glance, one must acknowledge the conceptual difference between a state official performing state functions in a way that violates federal law and a state official who is performing federally authorized functions but is alleged to have performed those functions improperly. One must acknowledge as well that some of the suits against state commissions brought under the act are directed at correcting the past decisions or other actions of the commission rather than at preventing future enforcement and that the actions at issue (interpretation and application of laws and regulations) involve the paradigmatic exercise of discretion. *Cf. Ex parte Young,* 209 U.S. at 158, 28 S.Ct. 441 ("There is no doubt that the court cannot control the exercise of the discretion of a [state] officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action.") Finally, there is the oddity of a suit against the commission members in a situation in which some commissioners had dissented from the decision being reviewed in federal court. Would only the majority members be named defendants?

Even if the carriers' *Ex parte Young* argument could have jumped these hurdles, it failed to overcome the obstacle of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), in which the Supreme Court held that when Congress creates a remedy within a legislative scheme, the federal courts may not use *Ex parte Young* as a basis for exercising jurisdiction over state officials who are alleged to have violated the substantive provisions of the legislation. Applying *Seminole Tribe,* I concluded that *Ex parte Young* provided no basis for jurisdiction under the 1996 act because Congress had included a remedy for allegedly unlawful actions by a state commission: judicial review of state commission actions under § 252(e)(6). Just as in *Seminole,* it was irrelevant to the application of *Ex parte Young* that the congressional remedy was invalid because it violated the Eleventh Amendment. What was relevant was that Congress had specified a particular remedy for violations of the act. *See Wisconsin Bell,* 27 F.Supp.2d at 1161 (citing *Seminole,* 517 U.S. at 76, 116 S.Ct. 1114).

Although I declined to apply the constructive waiver doctrine or to use *Ex*

*parte Young* as a mechanism for exercising federal jurisdiction, I delayed enforcement of the ruling because defendants had not made clear whether the ruling required dismissal of all the lawsuits. The parties had not developed the assertion that defendants were indispensable to the continuation of the litigation, warranting dismissal of all the cases pursuant to Fed.R.Civ.P. 19(b). Indeed, in at least two of the lawsuits (98–C–366–C and consolidated cases 98–C–11–C and 98–C–153–C), a controversy remained even in defendants' absence because the competing local carriers were aligned on opposite sides of the commission's ruling.

While the parties were briefing the question whether these cases might move forward in some fashion, the court of appeals decided *MCI*, 168 F.3d 315. The court held that the Illinois Commerce Commission was not entitled to Eleventh Amendment immunity when sued under the 1996 act, because the state had waived its immunity constructively when it chose to participate in the act's mandate of cooperative federalism. *See id.* at 322–32. Having reached this conclusion, the court of appeals declined expressly to decide whether *Ex parte Young* would serve as an independent ground for proceeding. *See id.* at 323 n. 3.

At a February 18, 1999 scheduling conference that followed the issuance of the *MCI* opinion, I directed the parties to submit additional briefs in which they would both discuss the effects of the court of appeals' decision on this court's November 27 opinion and order and update their arguments on the merits, taking into account new administrative and judicial precedent, including *Iowa Utilities Board*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835. Also, I granted defendants' request to amend their pleadings to raise a defense based on the Tenth Amendment.

From this additional briefing, and from a closer review of the act, it became apparent that oral argument was necessary to address defendants' various arguments

that this court lacked subject matter jurisdiction, a topic that had received no attention previously in light of the ruling that defendants were immune. For instance, it was not clear whether it is a jurisdictional prerequisite that a state commission have made an explicit "determination" in a dispute. A related question was whether a party to an interconnection agreement must exhaust the dispute resolution mechanisms outlined in the agreement before bringing an action in federal court. Oral argument was scheduled for June 24, 1999, which by happenstance was the first day following the conclusion of the Supreme Court's 1998–1999 term.

On its last day, the Supreme Court decided *College Savings Bank*, —— U.S. ——, 119 S.Ct. 2219, —— L.Ed.2d ——. The Court held that the "constructive-waiver experiment was ill conceived" and it overruled "whatever may remain" of *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the doctrine's seminal decision. *See* Erwin Chemerinsky, *Federal Jurisdiction*, § 7.6 at 434 (3d ed. 1999) (*Parden* is height of constructive consent).

 In light of the Supreme Court's rejection of the constructive waiver doctrine, I am persuaded that the court of appeals' prior decision in *MCI* is not controlling on defendants' entitlement to Eleventh Amendment immunity. Technically speaking, *MCI* is still on the books, although the court of appeals has vacated its prior order denying rehearing and directed the parties to file supplemental briefs addressing the effects of *College Savings Bank. See MCI Telecommunications Corp. v. Illinois Commerce Comm.*, 183 F.3d 567 (7th Cir.1999). Moreover, in this circuit, district courts have stated that they are not bound by a court of appeals' decision that has been undermined by a subsequent decision of the Supreme Court. *See Villasenor v. Industrial Wire & Cable, Inc.*, 929 F.Supp. 310, 313 (N.D.Ill.1996). Although research does not reveal a similar

statement by the court of appeals, two rulings in *Cameo Convalescent Center, Inc. v. Percy,* 738 F.2d 836 (7th Cir.1984) (*Cameo I* ), and 800 F.2d 108 (7th Cir.1986) (*Cameo II* ), imply that the court of appeals and the district courts are equally obliged to follow the most recent Supreme Court precedent. In *Cameo I,* 738 F.2d at 847, the court of appeals reversed the district court and remanded for retrial on various grounds. On remand, however, the district court set aside the mandate and dismissed the case in its entirety on the basis of a Supreme Court decision that was released one day after *Cameo* was decided. In *Cameo II,* the losing party contended that the district court could not dismiss the case because it was bound by either the court of appeals' prior mandate or the law of the case doctrine to retry the matter. The court of appeals rejected such claims, reasoning that the district court properly applied the Supreme Court's "intervening change in the controlling authority." *See Cameo II,* 800 F.2d at 110.

At oral argument in these cases, some of the local carriers and the United States requested the opportunity to brief the effects of *College Savings Bank.* Some suggested that *College Savings Bank* was not a complete renunciation of the constructive waiver doctrine and that cases brought against state commissions under the 1996 act might fit into what is left. Alternatively, two of the carriers predicted (correctly) that the court of appeals might reconsider *MCI,* making a stay appropriate. I am not convinced that either briefing or a stay is warranted.

It is true that in *College Savings Bank,* the Court acknowledged that some apparent constructive waivers are still viable in a limited context. For example, in exchange for federal legislation, such as approval of an interstate compact or the receipt of some gift, Congress can require a state to do something it could not otherwise compel it to do outright. *See College Savings Bank,* —— U.S. ——, 119 S.Ct.

2219, 2230. However, the 1996 act is neither an interstate compact nor an act involving a gift of funds. There is no arguable basis to a claim that equates a gift with a state's participation in the act's cooperative federalism (supervising the regulation of local telephone carriers in the state). The example the Court gave of Congress's ability to leverage its gift giving is *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), in which Congress conditioned the states' receipt of a portion of federal highway dollars upon raising the drinking age to 21. *See College Savings Bank,* 119 S.Ct. 2219, at 2230. With respect to the 1996 act, the constructive waiver argument would be that Congress gave the states the "gift" of being able to participate in the interconnection process. *See MCI,* 168 F.3d at 322 ("The states could participate in the federal regulatory function delegated to them by the federal government on the condition that their participation be reviewable in federal court.") But a state's continuing to regulate local telephone carriers is hardly the acceptance of a "gift" in the same way that accepting highway funding is characterized in *College Savings Bank.* A state's continued regulation of local enterprise (local telephone carriers) is an "otherwise permissible activity" that can yield no inference as to a state's motivation for doing it. *See College Savings Bank, id.* 119 S.Ct. 2219, 2231; *see also id.* at *10 (constructive consent is not a doctrine associated with waiver of constitutional rights). Indeed, it is debatable whether highway funds are a true gift that can be refused readily and without consequence. *Cf. id.* at *18 ("Given the amount of money at stake, it may be harder, not easier for a State to refuse highway funds than to refrain from entering the investment services business.") (Breyer, J., dissenting).

■ As the preceding analysis reveals, *College Savings Bank* is a time machine, transporting this lawsuit back to Novem-

ber 27, 1998, when I held that defendants were entitled to Eleventh Amendment immunity and that *Ex parte Young* did not provide an alternative ground for exercising jurisdiction. I see no reason to depart from the substance of that ruling.

However, a minor change in the November 27 opinion and order is necessary. In discussing the need for a clear signal warning of the potential of a suit in federal court as an element of the now dead constructive waiver doctrine, I misread § 252(e)(6). The statute provides:

**(6) Review of State commission actions**

In a case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act. In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

In reaching the conclusion that the statute provided such a signal, I reasoned that the first sentence of this statute "makes it clear that state commissions might be sued: it says that there will be 'judicial review of the *Commission's* actions.'" *Wisconsin Bell,* 27 F.Supp.2d at 1156. Defendants are correct that the first sentence, which uses the word "commission" with a capital "C," is directed toward the Federal Communications Commission. Only the second sentence, which uses the phrase "State commission," may be considered in the analysis.

On reconsideration, however, I see no reason to change the conclusion that § 252(e)(6) provides a clear warning to state commissions. By itself, the second sentence informs a state commission of two critical pieces of information: persons "aggrieved" by *its* decisions can bring suit and these suits will be heard in "Federal district court."

### B. *Subject Matter Jurisdiction*

At oral argument, I asked the parties to address the question whether these cases could continue without the commission as a party. In my view, a reasonable argument could be made that in the absence of the state commission, a federal court could still entertain a challenge to a commission's *ruling* so long as one local carrier was participating on each side of the ruling (that is, there is an Article III controversy); two, the only decision for the federal court is whether the ruling conforms to federal law; and three, the outcome and remedy would not prejudice the state commission. Under Rule 19(b), the potential of prejudice to an absent party supports a determination that the absent party is indispensable and that the lawsuit must be dismissed. In cases brought under § 252(e)(6), such prejudice might inure to an immune and absent state commission if the judicial remedy was a remand to the state commission to conduct further proceedings.

However, I am convinced that this argument cannot be sustained in light of the court of appeals' decisions in *MCI,* 168 F.3d 315, and *Illinois Bell,* 179 F.3d 566, Under these cases, one cannot claim that the necessity of a state commission is a matter of discretion under Rule 19. The cases hold that the presence of the commission is a jurisdictional prerequisite.

*MCI* involved a dispute over certain interconnection agreements that the Illinois Commerce Commission had arbitrated and approved. *Illinois Bell* involved a dispute between an incumbent local carrier (Illinois Bell) and several competing carriers with which the incumbent had entered into interconnection agreements. The incumbent argued that because calls made to Internet service providers are long distance (interstate) calls, it was not required to pay the other carriers "reciprocal com-

pensation" for those calls. (Under § 252(b)(5), interconnecting carriers are required to make arrangements to compensate each other for the costs of carrying the *local* calls that their respective customers make to each other.) When the incumbent stopped paying, the competing carriers filed complaints with the Illinois Commerce Commission, which determined that the incumbent was required to pay compensation for Internet calls and ordered it to continue doing so.

In *MCI*, the parties to the disputed agreement brought suit against the commission. In *Illinois Bell*, the incumbent carrier brought suit against the individual commissioners and the other local carriers. Both cases were brought in federal court pursuant to § 252(e)(6); in both cases, the plaintiffs contended that the state commission's order violated the 1996 act. *See MCI*, 168 F.3d at 318; *Illinois Bell*, 179 F.3d 566, 568–70.

Before taking up the question of Eleventh Amendment immunity in *MCI*, the court of appeals addressed the carriers' argument that the court need not reach the question of immunity "because the Telecommunications Act does not even provide for suits against states in federal court, but instead provides only for federal court review of the interconnection agreements themselves." *MCI*, 168 F.3d at 320. The court rejected this argument on the grounds that the statute does not permit such a construction when it is read as a whole. In addition, the court noted that the title of the subsection providing for judicial review § 252(e)(6) is titled "Review of state commission actions," not "Review of interconnection agreements, 'signaling that Congress intended that the state commissions be parties to the federal court suits reviewing their actions, just as the FCC is a party to suits seeking review of its actions.' " *Id.*

In *Illinois Bell*, 179 F.3d 566, it was the commissioners who raised the threshold argument that subject matter jurisdiction

was lacking under § 252(e)(6). Noting that the judicial review provision does not include the word "order," the commissioners argued that federal jurisdiction was limited to the review of final agreements and did not extend to orders of a commission arising out of such agreements. *See id.* at 179 F.3d at 569–70. The court of appeals rejected the commissioners' argument for essentially the same reasons it had articulated in *MCI*. First, it noted that the title of the provision uses the term "state commission actions." Second, the court relied on another provision, § 252(e)(4), which bars *state courts* from reviewing the "action" of a state commission in approving or rejecting an agreement. The court reasoned that a comparison of § 252(e)(6) and § 252(e)(4) reveals a congressional intention to permit competing carriers to bring lawsuits "reviewing 'actions' by state commissions and that those suits were to be brought exclusively in the federal courts." *See id.*, at 179 F.3d at 571. Finally, quoting *MCI*, 168 F.3d at 320, it added that Congress had intended that the " 'state commissions be parties to the federal court suits reviewing their actions, just as the FCC is a party to suits seeking review of its actions.' " *Id.*

Finally, before closing the jurisdictional discussion, the court of appeals noted the plaintiff's failure to make the commission a party to the suit. It saw this as only a technical problem because the defendant commissioners were named in their official capacities and they acknowledged that they were "the Commission." Accordingly, the court concluded, "We have jurisdiction under § 252(e)(6) to review the action of the Commission and will proceed on that basis." *Id.*, 179 F.3d at 571.

Were it not for *MCI* and *Illinois Bell*, one could plausibly argue, as I have noted, that the presence of the state commission was not a jurisdictional prerequisite and that in the absence of a state commission a federal court could still entertain a lawsuit to determine whether a commission's rul-

ing complied with the act, so long as there were two opposing carriers to insure an Article III controversy and the commission was not indispensable under Rule 19, a matter that would be decided on a case by case basis. Indeed, taking the argument further, portions of § 252(e) support an argument that Congress did not envision that state commissions would be parties to suits under § 252(e)(6) in the same way that the FCC is a party to proceedings reviewing its actions. *Compare Illinois Bell,* 179 F.3d 566, 571. Perhaps Congress envisioned the review of state commission actions to be similar to garden variety appeals from trial courts to appellate courts or to actions for judicial review of private arbitrations. In this type of proceeding, the first line decision makers are not thought as necessary to the proceedings in which their rulings are reviewed. The second sentence of § 252(e)(6) supports such an interpretation when read by itself: it provides that the district court is to "determine whether the *agreement* or statement *meets* the requirements of [the act]." (Emphasis added.) Support for this view may be found in § 252(e)(1), which requires state commissions to make written findings identifying any deficiencies they find in interconnection agreements. Thus, practically speaking, it is not immediately clear that the state commission must be parties to § 252(e)(6) proceedings in order to make their views known.

Nonetheless, *MCI* and *Illinois Bell* hold that the presence of the state commission is required for jurisdiction. According to these cases, all actions brought pursuant to § 252(e)(6) are defective in the absence of the state commission. The court does not explain why this is so, but this is the only conclusion that can be drawn from the decisions, especially in light of *Illinois Bell,* in which the court added the Illinois Commerce Commission in order to "perfect" the existence of jurisdiction. *See Illinois Bell,* 179 F.3d 566, 571. Because defendants are entitled to immunity, they

will no longer be parties to these actions. In their absence, these lawsuits must be dismissed.

█ One more issue deserves attention. In their pleadings, some of the local carriers contend that alternative bases for jurisdiction may be found in 28 U.S.C. § 1331 (general federal question), § 1337 (general federal commerce) and the declaratory judgment statutes, §§ 2201–02. Other courts have rejected summarily the claim that these statutes create jurisdiction over and beyond § 252(e). In *Indiana Bell Telephone Co., Inc. v. McCarty,* 30 F.Supp.2d 1100 (S.D.Ind. 1998), the district court explained that where Congress provides a means to seek review of an agency determination, alternative means of review are inapplicable. *See id.* at 1103 n. 2 (citing *Southwestern Bell Telephone Co. v. McKee,* No. Civ. A. 97–2197–EEO, 1997 WL 450041, *4 (D.Kan. July 15, 1997)). The decisions of these courts are persuasive. Indeed, a conclusion that such general jurisdiction exists would be contrary to *Seminole Tribe,* 517 U.S. 44, 116 S.Ct. 1114, which stands for the proposition that Congress's particular choices of remedy must be respected. Respect for congressional intent means that generalized statutes cannot be used in place of the tailored ones Congress has created. *See Wisconsin Bell,* 27 F.Supp.2d at 1159–60.

## ORDER

IT IS ORDERED that:

1. Defendants Public Service Commission of Wisconsin and its members, Cheryl L. Parrino, Daniel J. Eastman and Joseph P. Mettner, are entitled to Eleventh Amendment immunity in 97–C–566–C, 98–C–11–C, 98–C–153–C and 98–C–366–C; these cases are DISMISSED as to these defendants;

2. Subject matter jurisdiction is lacking in 97–C–566–C, 98–C–11–C, 98–C–153–C and 98–C–366–C; these cases are DISMISSED in full without prejudice;

3. The clerk of court is directed to enter judgment dismissing 97–C–566–C, 98–C–11–C, 98–C–153–C and 98–C–366–C for lack of subject matter jurisdiction and close the cases.