**INDIANA BELL TELEPHONE COMPANY, INC., d/b/a Ameritech Indiana, Plaintiff,**

v.

**William D. McCARTY; Mary Jo Huggman; C. Richard Klein; Camie Swanson–Hull; David Ziegner; (In Their Official Capacities as Commissioners of the Indiana Utility Regulatory Commission),**

**and**

**AT&T Communications of Indiana, Inc., Defendants.**

No. IP 97–0662–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

June 25, 1998.

Michael R. Fruehwald, Teresa E. Morton, Barnes & Thornburg, Indianapolis, Indiana, Theodore A. Livingston, Dennis G. Friedman, Kira E. Druyan, Mayer Brown & Platt, Chicago, Illinois, Sue E. Stemen, Ameritech Indiana, Indianapolis, Indiana, for plaintiff.

Michael J. Huston, Kevin M. Toner, Baker & Daniels, Indianapolis, Indiana, Clark M. Stalker, AT&T Corporation, Law Department, Chicago, Illinois, Cindy M. Lott, Deputy Attorney General, Office of the Attorney General of Indiana, Indianapolis, Indiana, Shawn B. Jensen, U.S. Department of Justice, Washington, D.C., Harold R. Bickham, Assistant U.S. Attorney, Office of the U.S. Attorney, Indianapolis, Indiana, for defendants.

**ENTRY DENYING DEFENDANT COMMISSIONERS' MOTION TO DISMISS; DENYING THE UNITED STATES AND THE FEDERAL COMMUNICATIONS COMMISSION'S MOTION TO INTERVENE; AND GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT AT&T'S COUNTERCLAIMS**

BARKER, Chief Judge.

This matter is before the Court on (1) Plaintiff's Motion to Dismiss AT&T's coun-

terclaims for lack of subject matter jurisdiction, lack of standing, and failure to exhaust contractual dispute resolution procedures before seeking judicial review; (2) Defendant Commissioners of the Indiana Utility Regulatory Commission's ("Commissioners") Motion to Dismiss Plaintiff's claims against them on Eleventh Amendment immunity grounds; (3) the United States and the Federal Communications Commission's ("FCC") Motion to Intervene in order to address Defendant Commissioners' Motion to Dismiss. For the following reasons, we hold that (1) Plaintiff's Motion to Dismiss AT&T's counterclaims is *GRANTED* because we lack subject matter jurisdiction over those claims; (2) Defendant Commissioners' Motion to Dismiss on Eleventh Amendment immunity grounds is *DENIED* because Indiana has waived its immunity; and (3) the United States and FCC's Motion to Intervene is *DENIED* as *MOOT*.

## I. BACKGROUND

This litigation arises from the Telecommunications Act of 1996 ("the Act"). The primary purpose of the Act is to foster competition in local telephone markets. *See GTE South Inc. v. Morrison,* 957 F.Supp. 800 (E.D.Va.1997). Pursuant to that goal, the Act requires "incumbent local exchange carriers" (1) to permit other telecommunication carriers to "interconnect" with the incumbent's network (which permits calls to carry between the incumbent's network and the interconnecting carrier's network); (2) to provide other carriers "unbundled" access to network elements (so interconnecting carriers can repackage elements and offer them to the public as a competitive service); and (3) to sell to new entrants at wholesale prices all telecommunications services offered to retail customers. 47 U.S.C. § 251(c)(2)–(4). Both incumbents and new entrants are required to negotiate interconnection agreements in good faith. 47 U.S.C. § 251(c)(1). If negotiations fail to result in a binding agreement on the relevant issues, any party to the negotiations may seek arbitration on the open issues. 47 U.S.C. § 252(b)(1). The Act provides that the "State commission" will arbitrate the parties' disputes. 47 U.S.C. § 252(c). However, if the State opts not to participate, the Federal Communication Commission will act in its place. 47 U.S.C. § 252(e)(5). In any event, the State commission or the FCC must approve all of the terms in the final agreement regardless of whether the terms were determined through arbitration or negotiation. 47 U.S.C. § 252(e)(1). An agreement (or parts thereof) adopted by negotiation may be rejected only if it discriminates against a carrier not a party to the agreement or if it is not in the public interest. 47 U.S.C. § 252(e)(2)(A). An agreement adopted by arbitration (or parts thereof) may be rejected if it fails to meet the requirements of section 251 (including FCC regulations) or section 252(d) (which provides for pricing standards). 47 U.S.C. § 252(e)(2)(B).

In this case, Plaintiff Indiana Bell Telephone Company, Inc. d/b/a Ameritech Indiana ("Ameritech") (the incumbent local carrier) and AT&T Communications of Indiana, Inc. ("AT&T") (the new entrant) were able to negotiate successfully and agree upon most of the terms of their interconnection agreement. The terms remaining in dispute following the negotiations were submitted to the Indiana Utility Regulatory Commission (i.e. the State commission) for arbitration. The IURC arbitrated those disputes and thereafter approved the parties' final agreement, which contains a mix of negotiated and arbitrated terms.

Ameritech subsequently filed this action, seeking review of several of the IURC's arbitration determinations. Meanwhile, after the interconnection agreement was approved by the commission, a disagreement arose between AT&T and Ameritech over the interpretation of some of the terms in the agreement that the parties had previously negotiated and agreed upon. Rather than return to the commission or submit their dispute to arbitration under the agreement's arbitration clause, AT&T filed two counterclaims in this action, seeking a declaration that its interpretation of those terms is correct or, alternatively, if Ameritech's interpretation is correct, a ruling that the terms violate the Telecommunications Act. We now address the motions before us.

## II. MOTION TO DISMISS AT&T'S COUNTERCLAIMS

██ Ameritech moves to dismiss AT&T's counterclaims, contending that (1) this Court lacks subject matter jurisdiction, (2) AT&T lacks standing, and (3) AT&T failed to exhaust the contractual dispute resolution procedure.[1]

██ We first address whether we have subject matter jurisdiction over the counterclaims. AT&T asserts that jurisdiction exists under the Telecommunications Act, which provides this Court with jurisdiction to review determinations made by the state commissions.[2] Specifically, section 252(e)(6) of the Act provides:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

Jurisdiction exists under the Act only if the following three prerequisites are satisfied: (1) the claim regards a State commission determination; (2) the claimant is an aggrieved party; and (3) the claimant seeks review of whether a statement or an agreement between an interconnecting service provider and a local exchange carrier satisfies the requirements of sections 251 and 252. *See* 47 U.S.C. § 252(e)(6); *Southwestern Bell Telephone Co. v. McKee*, 1997 WL 450041 at * 3, No. CIV. A. 97–2197–EEO (D.Kan. July 15, 1997). "The court will construe strictly the jurisdictional provision of the Telecommunications Act and resolve any doubts against federal jurisdiction." *McKee, supra* at *2 (citing Citizens' Utility Ratepayer Bd.

*v. McKee*, 946 F.Supp. 893, 895 (D.Kan. 1996)).

Ameritech contends that we lack jurisdiction over AT&T's counterclaims because the claims do not regard a "determination" made by the commission. Instead, according to Ameritech, the counterclaims regard issues of contract interpretation that were not arbitrated by the commission and, thus, fall outside our jurisdiction. AT&T rejoins that the commission's approval of the parties' agreement, which included approving the contract language at issue in the counterclaims, constitutes a "determination" under section 252(e)(6). Ameritech replies that the commission's approval of the Agreement was not a "determination" of the negotiated contract language, since the Act required the commission to approve negotiated contract terms regardless of their compliance with the specific statutory requirements.

It is undisputed that the terms at issue were negotiated and agreed upon by the parties and not arbitrated by the commission. Negotiated terms, however, do not escape review by the state commission. Section 252(e)(1) provides that "[a]ny interconnection agreement adopted by *negotiation* or arbitration shall be submitted for approval to the State commission." 47 U.S.C. § 252(e)(1) (emphasis added); *see also Iowa Utils. Bd. v. FCC*, 120 F.3d 753, 805 (8th Cir.1997). The agreement in this case was reviewed and approved by the commission. Under the Act, the commission could have rejected the negotiated terms in the agreement only if they (1) discriminated against a telecommunications carrier not a party to the agreement; or (2) were inconsistent with the public interest, convenience, and necessity. 47 U.S.C. § 252(e)(2). Otherwise, the commission was required to approve the negotiated terms

---

**1.** There is nothing in the record to indicate that AT&T is seeking relief through the commission or the agreement's arbitration clause.

**2.** AT&T also asserts jurisdiction under 28 U.S.C. §§ 1331, 1337, 2201 and 2202 in its counterclaim. (Notably, AT&T does not argue that jurisdiction exists under these statutes in its Response Brief). However, "where Congress provides a specific and adequate means to seek review of an agency determination, alternative means of review are inapplicable." *Southwestern Bell Telephone Co. v. McKee*, No. Civ.A.97–2197–EEO,

1997 WL 450041, *4 (D.Kan. July 15, 1997) (citing Califano v. Sanders, 430 U.S. 99, 108–109, 97 S.Ct. 980, 985–986, 51 L.Ed.2d 192 (1977)). Therefore, our jurisdictional analysis is limited to the Telecommunications Act. Indeed, 28 U.S.C. §§ 2201 and 2202 regard declaratory judgments and do not create any independent basis for jurisdiction, but only provide that once a case is "within its jurisdiction," a court may grant certain remedies. *A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n*, 921 F.2d 118, 120 n. 2 (7th Cir.1990).

**1104**

even if they were inconsistent with the statutory requirements that the arbitrated terms have to conform to. *Id.* Therefore, by approving the agreement, the commission necessarily determined that the negotiated terms were consistent with section 252(e)(2) of the Act, but did not determine whether the negotiated terms were consistent with other sections of the Act.[3]

Although the commission made a determination when it approved the agreement, AT&T's counterclaims do not address that determination or any other determination by the commission. Rather, AT&T requests (1) a declaration of the proper interpretation of the negotiated terms, and (2) if Ameritech's interpretation is correct, a ruling that the terms violate section 251 of the Act. Neither of these issues was determined by the commission. First, the terms were not submitted to arbitration or otherwise interpreted by the commission. Second, the commission did not address whether the negotiated terms were consistent with section 251, presumably, since approval of negotiated terms is not contingent on the terms' compliance with that section of the Act. *See* 47 U.S.C. § 252(e)(2)(A) and 252(a)(1).

The Telecommunications Act has been the source of ongoing litigation nationwide between incumbent local exchange carriers (e.g. Ameritech) and telecommunications carriers seeking to enter the local telephone market (e.g. AT&T). Thus far, however, this jurisdictional issue has been the source of very little case law. The parties have not cited any published cases on this issue and our independent research confirms the absence of any such cases. However, one unpublished decision has come to the Court's attention. In *AT & T Communications of Ohio, Inc. v. Ohio Bell Telephone Co. d/b/a Ameritech Ohio,* 29 F.Supp.2d 855 (S.D.Ohio 1998),

Judge Sargus addressed the same claims raised by AT&T in the instant case and, in a six-page opinion, held that the court lacked jurisdiction over those claims. In that case, the court concluded that "[t]he statutory scheme [of the Telecommunications Act] does not permit [a federal district court] to review disputes arising out of interconnection agreements not previously subject to action by a state commission." *Id.* at 856.

We agree with that analysis. The commission has not had the opportunity to address the issues raised in AT&T's counterclaims and circumventing the commission would jeopardize the entire system of review established by the Act. The Telecommunications Act was designed to allow the state commission to make the first determination on issues prior to judicial review. Therefore, consistent with the language and the purpose of the Telecommunications Act, we hold that we lack subject matter jurisdiction over AT&T's counterclaims. Having made this determination, we need not address the other grounds for dismissing the counterclaims put forth by Ameritech.

### III. *MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST IURC COMMISSIONERS*

■ Defendant Commissioners move to dismiss Plaintiff's claims against them, contending that they have Eleventh Amendment immunity against such claims.[4] Plaintiff responds that (1) the State of Indiana waived its Eleventh Amendment immunity, and (2) the suit is permissible under the *Ex parte Young* doctrine.

The Eleventh Amendment provides:

3. Section 252(e)(2)(A) sets forth the exhaustive list of reasons for rejecting negotiated terms, including that they (1) discriminate against telecommunication carriers not a party to the agreement; and (2) are inconsistent with public policy, necessity, or convenience. By itself, the negotiated terms' non-compliance with other requirements in the Act (most notably, section 251) does not provide the state commission with grounds to reject the terms. In fact, section 252(a)(1) provides that "an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecom-

munications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 of this Title."

4. Plaintiff seeks a declaration outlining the proper interpretation of some of the terms in its interconnection agreement with AT&T. The IURC commissioners were named as defendants to ensure that a determination by this Court would bind the IURC. Plaintiff also seeks to enjoin the commissioners from acting contrary to a determination made by this Court.

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. "Under the Eleventh Amendment, states are generally immune from suit 'regardless of the nature of the relief sought.'" *Darne v. State of Wisconsin, Dept. of Revenue*, 137 F.3d 484, 487–88 (7th Cir.1998) (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). However, there are three exceptions to a state's immunity under the Eleventh Amendment.

First, suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment. Second, individuals may sue directly a state when Congress has abrogated the immunity in unequivocal terms and pursuant to a valid exercise of its own power. Finally, a suit may be brought against a state directly when a state has waived its immunity and validly consented to suit in federal court.

*Darne*, 137 F.3d at 488.

The commissioners are being sued in their official capacity as members of the IURC, which is an agency of the State of Indiana. Accordingly, the commissioners have immunity under the Eleventh Amendment, unless one of the aforementioned exceptions applies. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

Turning to those exceptions, we first address whether Indiana waived its Eleventh Amendment immunity. Plaintiff contends that Indiana waived its immunity by participating in a federal program under the Telecommunications Act. Defendant Commissioners rejoin that Indiana's participation did not constitute waiver of its Eleventh Amendment immunity.

■ "By waiving the protections of the Eleventh Amendment, a state or state agency may consent to suit in federal court." *MCI Telecommunications Co. v. Illinois Bell*, No. 97–C–2225, 1998 WL 156678, at *4 (N.D.Ill. March 31, 1998) (*citing Kroll v. Bd. of Trustees*, 934 F.2d 904, 907 (7th Cir.1991)). Although the test for determining whether waiver exists is stringent, it can be effected in one of two ways. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (state can waive Eleventh Amendment immunity); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (same). First, a state may expressly waive its Eleventh Amendment immunity through a state statute or constitutional provision, as long as the provision explicitly "specif[ies] the State's intention to subject itself to suit in federal court." *Id.* at 241, 105 S.Ct. at 3146 (emphasis in original). Second, a state may constructively waive its immunity by voluntarily participating in federal programs when Congress expresses "a clear intent to condition participation in the programs ... on a State's consent to waive its constitutional immunity." *Id.* at 247, 105 S.Ct. at 3149–50; *see also Marie v. Edgar*, 131 F.3d 610, 617 (7th Cir. 1997).

Indiana has not expressly waived its Eleventh Amendment immunity through a statute or its constitution. Therefore, the only issue is whether Indiana waived its immunity by participating in a federal program under the Telecommunications Act. *See Digiore v. State of Illinois*, 962 F.Supp. 1064, 1074 (N.D.Ill. 1997) (held that "[c]onsent through quid pro quo participation in federal programs amounts to a 'constructive waiver' of immunity").

The Act provides that the "State commission" will arbitrate the parties' disputes and approve or reject the final agreement. However, the State is not required to participate and may opt out of their regulatory roles. Section 252(e)(5) provides:

If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission [FCC] shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to

the proceeding or matter and act for the State commission.

47 U.S.C. § 252(e)(5). This provision clearly demonstrates that a state's participation is voluntary and not required. Furthermore, the Act makes clear that the state's actions will be subject to review by a federal district court. Section 252(e)(6) specifically provides that, "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court...." *See U.S. West Communications, Inc. v. TCG Seattle,* 971 F.Supp. 1365 (W.D.Wash.1997).

■ Despite the fact that its participation clearly was not required and its actions clearly were subject to judicial review in federal district court, Indiana chose to participate under the Act. These actions plainly constitute a waiver of its Eleventh Amendment immunity. *See Port Authority v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). Other district courts recently addressing this issue have reached similar conclusions. *See e.g., U.S. West v. TCG Seattle,* 971 F.Supp. 1365 (W.D.Wash.1997); *U.S. West v. Reinbold,* No. A1–97–26 (D.N.D. July 28, 1997); *U.S. West v. Thoms,* No. 4–97–CV–70082 (S.D.Iowa Aug. 4, 1997); *GTE South v. Morrison,* No. 3:97–DV–493 (E.D.Va. Nov. 7, 1997); *AT & T v. Bellsouth,* No. 5:97–DV–405–BR (E.D.N.C. Nov. 20, 1997); *GTE v. Clark,* No. 4:97–CV–211–RH (N.D.Fla. Nov. 21, 1997); *AT & T v. Bellsouth,* No. 3:97–2164–17 (D.S.C. Dec. 11, 1997); *AT & T v. Bellsouth,* No. 97–79 (E.D.Ky. Dec. 15, 1997); *U.S. West v. Public*

*Service Commission of Utah,* 991 F.Supp. 1299 (D.Utah 1998); *but see MCI v. Frisby,* 998 F.Supp. 625, 1998 WL 138680 (D.Md. 1998). Accordingly, Defendant Commissioners' Motion to Dismiss Plaintiff's claims against them on Eleventh Amendment grounds is *DENIED.*[5]

## IV. *MOTION TO INTERVENE*

The United States and the FCC move this Court, pursuant to 28 U.S.C. § 2403(a) and Fed.R.Civ.P. 24, for leave to intervene, as a matter of right or permissively, in order to address the Eleventh Amendment issue raised by Defendant Commissioners' Motion to Dismiss. The United States and the FCC contend as follows:

> [A] ruling that the Commissioners are not amenable to suit in federal court could render their determinations under the 1996 Act (a federal statute) unreviewable by a federal court, a result at odds with the purpose of Congress and contrary to the interests of the United States.

(Memorandum in Support of Motion to Intervene at 1–2). Since we have reviewed the briefs submitted by those who are already parties to this litigation and conclude that the Eleventh Amendment does not bar federal court review, we see no reason to delay our ruling to await additional briefing in support of that conclusion.

The United States and the FCC seek to intervene solely for the purpose of responding to Defendant Commissioners' Motion to Dismiss. Since we have already ruled on

---

5. Furthermore, the *Ex parte Young* doctrine authorizes Plaintiff's claims, despite Indiana's Eleventh Amendment immunity. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under *Ex parte Young,* "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). In the instant case, Plaintiff requests prospective injunctive relief against the IURC commissioners in order to ensure that they will follow federal law as established in this Court's ruling.

Although *Ex parte Young* continues to be good law, (*Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)), the United States Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44,

116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), recently cautioned that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State. of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Id.* at 54, 116 S.Ct. at 1122. In the instant case, however, Congress has not prescribed the type of detailed remedial scheme that would foreclose the application of *Ex parte Young.* Indeed, there is "no state forum available to vindicate" a telecommunication carrier's claim that an interconnection agreement violates the Act. *See Iowa Utilities Bd. v. FCC,* 120 F.3d 753, 803–04 (8th Cir.1997) (federal district courts have exclusive jurisdiction for review of interconnection agreements).

that motion, the Motion to Intervene is *DE-NIED* as *MOOT*.

### III. *CONCLUSION*

For the aforementioned reasons, Plaintiff's Motion to Dismiss AT&T's counterclaims is *GRANTED* because we lack subject matter jurisdiction over those claims. Defendant Commissioners' Motion to Dismiss Plaintiff's claims against them on Eleventh Amendment immunity grounds is *DENIED* because Indiana waived its sovereign immunity. Finally, the United States and the FCC's Motion to Intervene in order to address Defendant Commissioners' Motion to Dismiss is *DENIED* as *MOOT*.