**INTERMEDIA COMMUNICATIONS, INC., Plaintiff,**

**v.**

**BELLSOUTH TELECOMMUNICATIONS, INC., Defendant.**

**No. 8:00CV1410–T–24(C).**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 15, 2000.

David Thomas Knight, Troy A. Fuhrman, Hill, Ward & Henderson, P.A., Tampa, FL, Joseph F. Yenouskas, Jonathan Canis, Douglas P. Lobel, Andrew M. Klein, Kelley Drye & Warren, LLP, Washington, DC, Scott Sapperstein, Intermedia Communications Inc. Senior Policy Counsel, Tampa, FL, for plaintiff.

Steven L. Brannock, G. Calvin Hayes, William F. Hamilton, Holland & Knight, LLP, Tampa, FL, T. Michael Twomey, James Henry Walker, BellSouth Telecommunications, Inc., Atlanta, GA, for defendant.

***ORDER***

BUCKLEW, District Judge.

This cause comes before the Court on Defendant BellSouth's Motion to Dismiss (Doc. No. 10, 17). Plaintiff opposes this motion (Doc. No. 14, 29).

### *I. Background*

This case involves antitrust, fraud, and contract actions, as well as claims for alleged violations of the Telecommunications Act of 1996. Specifically, Plaintiff alleges that Defendant undertook premeditated and deliberate acts to illegally retain its monopoly over the market for local telecommunications services throughout the Southeastern United States.

#### *A. Telecommunications Act of 1996 ("TCA")* [1]

The TCA was created to promote competition in the communications industry. To reach this end, Congress imposed obligations on companies who had historically provided local telephone service (referred to as "incumbent local exchange companies" or "ILECs"), such as Defendant, to permit new entrants (referred to as "competitive local exchange companies" or "CLECs"), such as Plaintiff, access to their telecommunications networks in order to afford CLECs the opportunity to provide local telephone service in competition with ILECs. 47 U.S.C. § 251.

To this end, the two carriers would develop an interconnection agreement outlining the substantive terms of access, either through voluntary negotiation or arbitration. 47 U.S.C. § 252. Congress directed that the parties must negotiate the terms of the agreement in good faith. 47 U.S.C. § 251(c)(1). The resulting agreement must be submitted to the state public service commission ("PSC") for approval. *Id.* at § 252(e).

#### *B. Interconnection Requirements*

In order for Plaintiff to compete in the market, Plaintiff must be able to interconnect and exchange traffic with Defendant. Therefore, both parties must forecast call volumes and provide these forecasts to the other party, order a sufficient quantity of high capacity copper or fiberoptic cables (referred to as "trunks," which connect the parties' networks so that traffic can be exchanged), and then install the trunks in a timely manner.

Each party bears the cost of supplying the trunk that brings its traffic to the other carrier. Plaintiff orders trunks from Defendant, so that Plaintiff's customers can call Defendant's customers. Defendant usually provides its own trunks. If trunks are not installed in a timely manner, the calls between the parties' networks will not go through.

To order a trunk, Plaintiff sends Defendant an Access Service Request ("ASR"). Following the submission of an ASR, De-

1. Pub.L. No. 104–104, 110 Stat. 56.

fendant must issue a Firm Order Confirmation ("FOC"), acknowledging receipt of the ASR and providing a date for the installation of the trunk.

Additionally, each party must compensate the other for the cost of delivering local traffic to the other party. This compensation is referred to as "reciprocal compensation."

### C. *Plaintiff's Complaint*

On June 21, 1996, Plaintiff and Defendant entered into an interconnection agreement, as required by the TCA, covering nine state telecommunications markets.[2] The agreement was approved by each state's PSC. In 1998, the parties amended their interconnection agreement.

However, the relationship between the parties failed. Plaintiff alleges that Defendant intentionally and consistently failed to process Plaintiff's ASRs, provide trunks for Plaintiff, and install sufficient trunking capacity, thereby denying Plaintiff interconnection with Defendant's network, and thus limiting Plaintiff's ability to provide service to its customers. Furthermore, Plaintiff alleges that Defendant has taken an unfounded position that calls to internet service providers ("ISPs") are not local traffic, in order for Defendant to refuse to pay Plaintiff over $100 million in reciprocal compensation, which deprives Plaintiff of substantial revenue that it needs in order to compete in the local telecommunications market. Additionally, Plaintiff alleges that Defendant fraudulently procured the 1998 amendment to their interconnection agreement in an attempt to lower the reciprocal compensation rates paid by Defendant to Plaintiff. Plaintiff contends that all of the above actions contravene the plain language of the parties' interconnection agreement and the TCA, and that these actions are calculated to drive Plaintiff from the marketplace in order eliminate competition.

Plaintiff filed an eleven count complaint alleging the following:

- Count I: fraudulent inducement regarding the interconnection agreement;
- Count II: violation of the TCA by failing to negotiate in good faith (47 U.S.C. § 251);
- Count III: breach of contract due to the failure to interconnect;
- Count IV: violation of the TCA due to the failure to interconnect (47 U.S.C. § 251);
- Count V: fraudulent inducement regarding the 1998 amendment to the interconnection agreement;
- Count VI: violation of the TCA due to the failure to negotiate the 1998 amendment in good faith (47 U.S.C. § 251);
- Count VII: tortious interference with contractual relations;
- Count VIII: tortious interference with prospective economic advantage;
- Count IX: monopolization (15 U.S.C. § 2)
- Count X: monopolization due to the refusal to deal under the essential facilities doctrine (15 U.S.C. § 2)
- Count XI: attempted monopolization (15 U.S.C. § 2)

### D. *Defendant's Motion to Dismiss*

Defendant filed a motion to dismiss Plaintiff's entire complaint on several grounds, two of which the Court will address. First, Defendant contends that Counts IX though XI (monopolization and attempted monopolization) are legally deficient, because no antitrust action exists for

2. The nine states are: Florida, Georgia, North Carolina, Alabama, Kentucky, Louisiana, Mississippi, South Carolina, and Tennessee.

Defendant's alleged conduct. Second, Defendant contends that the remaining claims (Counts I through XIII) are subject to the exclusive jurisdiction of the state PSCs. Accordingly, the Court will address each argument separately.

### *II. Antitrust Claims*

Defendant first contends that Counts IX though XI (monopolization and attempted monopolization under 15 U.S.C. § 2) are legally deficient, and therefore, should be dismissed, because no antitrust action exists for Defendant's alleged conduct. Defendant argues that the TCA does not provide a basis for antitrust claims and cites *Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir.2000), for this proposition.

Plaintiff, however, counters that § 601(b) of the TCA explicitly states that with limited exceptions (which do not apply to this case), nothing in the TCA "shall be construed to modify, impair, or supersede the applicability of any of the antitrust laws." 110 Stat. 56. Therefore, Plaintiff contends that a violation of the TCA can be the basis for an antitrust claim.

In *Goldwasser*, the court rejected the argument that a violation of the TCA could automatically be the basis for an antitrust claim. *See Goldwasser*, 222 F.3d at 399–401. In reaching this conclusion, the court reasoned that since antitrust laws do not impose the kind of affirmative duty to help one's competitors that the TCA imposes, a violation of the TCA's obligations to help one's competitors cannot be the basis for an antitrust claim. *See id.* at 400. However, the court went on to state that the TCA did not "confer[ ] implied immunity on behavior that would otherwise violate the antitrust law." *See id.* at 401.

Plaintiff asks this Court not to follow the *Goldwasser* case, and cites *AT & T Wireless PCS, Inc. v. City of Atlanta*, 210 F.3d 1322 (11th Cir.2000), vacated on other grounds, 223 F.3d 1324 (11th Cir.2000), as supporting its contention that an antitrust claim can be based on a violation of the TCA. In *AT & T Wireless*, the issue before the court was whether compensatory damages are available under §§ 1983 and 1988 for a violation of the TCA. *See id.* at 1325. In finding that § 1983 remedies were available, the Court looked to Congressional intent expressed in the TCA.

In looking at the history of the TCA, the Court noted that Congress created an antitrust savings clause in § 601(b), which mandates that "except where noted, nothing in the TCA modifies, impairs, or supersedes antitrust laws." *Id.* at 1329 The court stated that § 601(b) was created due to the TCA's "potentially confusing statutory overlap with antitrust laws." *Id.* The court noted that as a result of the antitrust savings clause in § 601(b), 47 U.S.C. § 221(a) was eliminated, which meant that the FCC's power to confer antitrust immunity on mergers of telephone companies was taken away. *See id.* (citation omitted).

In analyzing both *Goldwasser* and *AT & T Wireless*, the Court finds that the two cases can be read together. *Goldwasser* stands for the proposition that a violation of the TCA cannot automatically be the basis for an antitrust claim, since there would be no antitrust claim in the absence of the TCA (because without the TCA, there is no obligation to help one's competitors). However, other behavior that could be the basis for an antitrust claim, regardless of whether the TCA existed, is not immune from antitrust liability even though it also violates the TCA. This contention is consistent with *AT & T Wireless*, which notes that nothing in the TCA modifies or impairs antitrust liability. Thus, any behavior that can be the basis for an antitrust claim before the creation of the TCA still can be the basis of an antitrust claim after the creation of the TCA.

In the case at bar, most of the allegations that serve as a basis for the antitrust claims involve violations of the TCA, but as discussed above, violations of the TCA do not automatically serve as a basis for an antitrust claim. However, Plaintiff's claim that Defendant did not pay Plaintiff reciprocal compensation for ISP-bound calls should be analyzed further.

Plaintiff alleges that Defendant intentionally refused to pay Plaintiff for calls made by Plaintiff's customers to ISPs. Further, Plaintiff alleges that the reason that Defendant refused to pay for these calls was because Defendant contended that these calls were interstate calls, and thus did not constitute local traffic subject to the reciprocal compensation arrangement under the parties' interconnection agreement.

Plaintiff then alleges that it filed complaints with the state commissions of Florida, Georgia, and North Carolina, and Defendant was ordered to pay for ISP-bound calls. Further, Defendant appealed these decisions and lost. Plaintiff contends that Defendant's choice to appeal these decisions is evidence of Defendant's intent to exclude Plaintiff from the local market by withholding the reciprocal compensation (which served as Plaintiff's principal source of revenue necessary in order to reach new customers and build new facilities).

Defendant contends that its actions in appealing the decisions cannot be the basis for an antitrust claim. In support of this contention, Defendant points out that a Louisiana PSC ruled in favor of Defendant on the issue of reciprocal compensation for ISP-bound traffic. Therefore, Defendant cites *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), for its contention that antitrust immunity applies to litigation before courts and administrative agencies, unless the litigation is a sham. Further, "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, ... an antitrust claim premised on the sham exception must fail." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Therefore, Defendant argues that the Louisiana PSC ruling in its favor is evidence that Defendant could conclude that its appeals could elicit a favorable outcome, and thus, were not a sham. The Court agrees with this contention and finds that an antitrust claim based on Defendant's failure to pay for ISP-bound traffic while it was appealing the commissions' orders to pay cannot stand.

Accordingly, all of Plaintiff's antitrust claims must fail because they are either based on Defendant's alleged violations of the TCA or immunized from antitrust liability. Therefore, Plaintiff's antitrust claims (Counts IX, X, and XI) must be dismissed.

### *III. Jurisdiction of the state PSCs*

Defendant also argues that the remaining claims in Plaintiff's complaint involving allegations that Defendant violated § 251 of the TCA and various state law claims based on the same behavior (Counts I through XIII) must be dismissed, since they are subject to the exclusive jurisdiction of the state PSCs. To support its exclusive jurisdiction contention, Defendant cites 47 U.S.C. § 252(e)(6), which states in part: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement ... meets the requirements of section 251 of this title and this section." Thus, Defendant argues that Plaintiff must first bring

its claims that Defendant violated § 251 to the state PSC. because a federal court only has jurisdiction to review a PSC's determination.

The cases cited by Defendant appear to support this contention. *See e.g. Southwestern Bell Telephone Co. v. Public Utility Comm'n of Texas,* 208 F.3d 475, 479–80 (5th Cir.2000) (citations omitted)(stating that "the FCC plainly expects state commissions to decide intermediation and enforcement disputes that arise after the approval procedures are complete"); *AT & T Communications of Illinois, Inc. v. Illinois Bell Telephone Co.,* No. 97 C 0886, 1998 WL 525437, *5 (N.D.Ill. Aug.18,1998)(refusing to review issues that were not first submitted to the state commission for a determination); *Indiana Bell Telephone Co., Inc. v. McCarty,* 30 F.Supp.2d 1100, 1104 (S.D.Ind.1998)(stating that the TCA "was designed to allow the state commission to make the first determination on issues prior to judicial review").

Plaintiff's main argument in opposition is that 47 U.S.C. § 207[3] provides federal courts with jurisdiction to hear claims involving violations of § 251 of the TCA. However, Plaintiff has failed to cite any cases to support this proposition. In fact, the Court has only found one case which found that a plaintiff has a private right of action under § 207 for violations of § 251 of the TCA. *See Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.,* No. 00 Civ.1910(SHS), 2000 WL 1800653, (S.D.N.Y. Dec.6, 2000).

In *Bell Atlantic,* however, the plaintiffs were *customers* of the phone companies, not the phone companies themselves. *See id.* Furthermore, the Court in *Bell Atlantic* noted that the plaintiffs' claim was inapposite of the situations where potential competitors attempt to circumvent Congress's regulatory scheme in 47 U.S.C. § 252 by filing suit in federal court. *See id.* at *5.

Therefore, this Court finds that *Bell Atlantic* does not conflict with the cases cited by Defendant for the proposition that phone companies must first bring their claims of violations of § 251 to the state PSC before a federal court has jurisdiction over the matter. Accordingly, this Court agrees with Defendant that Plaintiff's claims involving alleged violations of § 251 (Counts II, IV, and VI) must be dismissed, as this Court lacks jurisdiction to hear these claims at this time.[4]

## *IV. Remaining State Law Claims*

The remaining claims (Counts I, III, V, VII, VIII) are all based on state law. Plaintiff alleges that this Court has supplemental jurisdiction over those claims based on 28 U.S.C. § 1367. However, since this Court has dismissed the related federal claims, this Court will decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3). While it appears that there may be diversity jurisdiction, such was not alleged. Accordingly, the parties are hereby requested to file with the Court their positions as to whether this Court has subject matter jurisdiction over the

3. 47 U.S.C. § 207 provides that

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission, ... or may bring suit for recovery of damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

4. The Court notes that Defendant argued that all of Plaintiff's remaining claims, including the state law claims, were subject to the exclusive jurisdiction of the PSCs. However, Defendant has not provided any authority for its contention that the state law claims are subject to the exclusive jurisdiction of the PSCs.

state law claims on or before December 29, 2000. This Court will defer ruling on Defendant's motion to dismiss as it relates to the state law claims until this Court's subject matter jurisdiction has been established.

Accordingly, it is ORDERED AND ADJUDGED that

(1) Defendant BellSouth's Motion to Dismiss (Doc. No. 10) is GRANTED to the extent that Defendant seeks to dismiss Counts II, IV, VI, IX, X, and XI of Plaintiff's complaint;

(2) Defendant BellSouth's Motion to Dismiss (Doc. No. 10) is DEFERRED to the extent it relates to Counts I, III, V, VII, and VIII of Plaintiff's complaint; and

(3) The parties are directed to file with the Court their positions as to whether this Court has subject matter jurisdiction over Counts I, III, V, VII, and VIII on or before December 29, 2000.