**CONTACT COMMUNICATIONS,**
a Wyoming Corporation,
**Plaintiff,**

v.

**QWEST CORPORATION, a Colorado Corporation, Defendant.**

No. 02–CV–171–J.

United States District Court,
D. Wyoming.

Feb. 28, 2003.

Alexander K. Davidson, Wendy J. Curtis, Patton & Davison, Cheyenne, WY, for Plaintiff.

Paul Hickey, Hickey, Mackey, Evans & Walker, Cheyenne, WY, Timothy M. Tymkovich, Hale, Hackstaff, Tymkovich, LLP, Denver, CO, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(1)**

ALAN B. JOHNSON, District Judge.

The above-entitled matter has come before the Court on Defendant Qwest Corporation's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1), or in the alternative, the defendant moves to stay the current action pending arbitration. The Court having heard the arguments, and having reviewed and considered the motions and briefs filed therewith, finds that the defendant's motion to dismiss should be GRANTED for the reasons stated below.

## I. FACTUAL BACKGROUND

This is an action for money damages for an alleged breach of two interconnection agreements between Plaintiff Contact Communications ("Contact") and Defendant Qwest Corporation ("Qwest") that were approved by the Wyoming Public Service Commission ("Wyoming PSC"). The Telecommunications Act of 1996 ("TCA") created a new telecommunications regime designed to foster competition in local telephone markets. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 122 S.Ct. 1753, 1756, 152 L.Ed.2d 871 (2002). "The Act imposed various obligations on incumbent local-exchange carriers ('LECs'), including a duty to share their networks with competitors." *Id.; see* 47 U.S.C. § 251(c) (1994 ed., Supp. V). "When a new entrant seeks access to a market, the incumbent LEC must 'provide ... interconnection with' the incumbent's existing network and the carriers must then establish 'reciprocal compensation arrangements' for transporting and terminating the calls placed by each others' customers." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 122 S.Ct. at 1756; 47 U.S.C. § 251(c)(2), § 251(b)(5). "An incumbent LEC 'may negotiate and enter into a binding agreement' with the new entrant 'to fulfill the duties' imposed by § 251(b) and (c), but 'without regard to the standards set forth' in those provisions." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 122 S.Ct. at 1756 (citing *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371–373, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999)); 47 U.S.C. § 252(a)(1), § 251(c)(1). "That agreement must be submitted to the state commission for approval, which may reject it if it discriminates against a carrier not a party or is not consistent with 'the public interest, convenience, and necessity.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 122 S.Ct. at 1756 (citing 47 U.S.C. § 252(e)(1), § 252(e)(2)(A)).

Qwest negotiated two interconnection agreements with Contact. The Wyoming PSC approved the agreements in 1999 and in 2001 (the "1999 Agreement" and the

"2001 Agreement"). Both agreements were entered into pursuant to the 1996 TCA and became effective upon their approval by the PSC under 47 U.S.C. § 252(e). The interconnection agreements govern the business relationship between Qwest and Contact for the provision of telecommunication services, network elements and collocation of telecommunications facilities, as set out in the 1996 Act.

At some point, Qwest informed Contact that it would no longer pay reciprocal compensation for telephone calls made by Qwest's customers to the local access numbers of Internet Service Providers ("ISPs"), claiming that ISP traffic was not "local traffic" subject to the reciprocal compensation agreement because ISPs connect customers to distant Web sites.

Contact disputed Qwest's claim and filed this action for breach of contract.[1] Contact filed an action in the United States District Court for the District of Wyoming, citing 28 U.S.C. § 1332 as the basis for jurisdiction.[2] Contact has not presented its claims to either the PSC or the Federal Communications Commission ("FCC") for resolution. As such, no determination of Contact's claims has yet been made by the PSC or by the FCC, and Contact is not asking the Court to review a decision of either agency.

Qwest now moves to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) asserting that this Court lacks subject matter jurisdiction, or in the alternative, to stay the proceedings pending arbitration.[3]

1. In essence, Contact's claims relate to the circumstances under which Contact and Qwest are required to compensate each other for terminating the local calls of the other carrier's customers. Specifically, Contact claims that, under the terms of the interconnection agreements, it is entitled to receive "reciprocal compensation" from Qwest for local calls originated by Qwest customers that are terminated by Contact. According to Qwest's records, however, the calls for which Contact seeks compensation are not truly "local" calls but are calls to internet service providers ("ISPs") that are placed for connection to the internet. The FCC has determined that ISP-bound traffic which is ultimately destined for locations outside the local calling area (the ISP location essentially being an intermediate point)is not local traffic and is therefore not subject to reciprocal compensation. (Order on Remand and Report and Order, Fed. Comm. Comm'n, FCC 01–131.) Based on these authorities and the language of the interconnection agreements, Qwest has refused to pay Contact for ISP–Bound call termination.

Despite these authorities, Contact has filed this action claiming breach of both the 1999 and 2001 Agreements and it has instituted a proceeding with the American Arbitration Association, No. 77 Y 181 00385 o2JRJ, for the alleged breach of the 1999 Agreement.

2. The statute states:

.§ 1332. Diversity of citizenship; amount in controversy; costs.

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States; ...

28 U.S.C. § 1332.

There does not appear to be a dispute between the parties that the amount in controversy and the diversity requirements are satisfied.

3. The arbitration is based on an arbitration clause in the 1999 Agreement that requires arbitration of any disputes between the parties, subject only to the alternative of seeking relief before the PSC or the FCC. Specifically, Section 26.17 of the 1999 Agreement provides:

If any claim, controversy or dispute between the Parties, their agents, employees, officers, directors or affiliated agents ("Dispute") cannot be settled through negotiation, it shall be resolved by arbitration conducted by a single arbitrator engaged in the practice of law, under the then current rules of American Arbitration Association ("AAA"). The Federal Arbitration Act, 9 U.S.C. Secs. 1–16, not state law, shall govern the arbitrability of all Disputes. The arbitrator shall not have the authority to

## II. LEGAL STANDARD

The party invoking federal jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *United States ex. rel. Holmes v. Consumer Ins. Group*, 279 F.3d 1245, 1249 (10th Cir.2002). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) may take two forms. When a defendant makes a facial attack on the complaint's allegations, which challenges the sufficiency of the complaint, the district court will accept the plaintiff's allegations as true. *Cal. Cas. & Fire Ins. Co. v. Brinkman*, 50 F.Supp.2d 1157, 1161 (D.Wyo.1999). If, however, the defendant goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends, the district court will not presume the truthfulness of the plaintiff's allegations and has wide discretion to consider other documents to resolve the jurisdictional question. *Id.*

## III. PARTIES' ARGUMENTS

Qwest argues that the Court does not have subject matter jurisdiction because Contact did not first seek relief through the state commission. The defendant contends that the 1996 Act contemplates and creates a necessary role for state commissions in the first instance.[4] Courts have

repeatedly found that the federal statutory scheme set forth under 47 U.S.C. § 252(e) limits the role of federal courts to appellate review of state commission decisions interpreting interconnection agreements. *See, e.g., Bell Atlantic–Virginia, Inc. v. WorldCom Tech. of Virginia, Inc.*, 70 F.Supp.2d 620 (E.D.Va.1999) (dismissing a breach of contract claim similar to Contact's and finding "that the Telecommunications Act was designed to allow the state commission to make the first determination"). According to the Qwest, all of the cases in which the federal courts have found jurisdiction to hear claims similar to those brought by Contact in this case, were cases in which the issues were first presented to the state commission for decision.

Qwest concludes that because the 1996 Act contemplates review by state commissions in the first instance, Contact must first obtain state commission review of the claims it seeks to bring in this action. Since Contact has not presented its claims to the PSC for resolution and the PSC has made no determination of those claims, this Court lacks jurisdiction to consider Contact's claims.

Plaintiff Contact disputes defendant's proposition that the Wyoming PSC has exclusive jurisdiction to hear this controversy. Contact filed a breach of contract

---

award punitive damages. All expedited procedures prescribed by the AA rules shall apply. The arbitrator's award shall be final and binding and may be entered in any court having jurisdiction thereof. The prevailing Party, as determined by the arbitrator, shall be entitled to an award of reasonable attorneys' fees and costs. The arbitration shall occur in Denver, Colorado. Nothing in this Section shall be construed to waive or limit either Party's right to seek relief from the Commission or the Federal Communications Commission as provided by state or federal law.

No dispute, regardless of the form of action, arising out of this Agreement, may be brought by either Party more than two (2) years after the cause of action accrues.

4. The statute provides:

In any case in which a State Commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

claim based on state law pursuant to the diversity jurisdiction statute. Contact takes the position that no portion of the 1996 TCA, including 47 U.S.C. § 252(e)(6), divests this Court of its jurisdiction under 28 U.S.C. § 1332.

## IV. LEGAL ANALYSIS

### Whether this Court Has Subject Matter Jurisdiction?

Contact contends that 28 U.S.C. § 1332 independently grants federal courts subject matter jurisdiction over a breach of contract dispute to determine whether Qwest is in compliance with the contract. In contrast, Qwest asserts that 47 U.S.C. § 252(e)(6) strips this Court of its diversity jurisdiction. The Court first notes that it appears as though no federal district court has resolved the issue of whether 47 U.S.C. § 252(e)(6) divests this Court of the diversity jurisdiction granted to it pursuant to 28 U.S.C. § 1332.[5]

### A. The TCA Strips Federal District Courts of Federal Question Jurisdiction Pursuant to 28 U.S.C. § 1331 Regarding Claims That Have Not Been Presented to a PSC.

■ Congress has divided authority for enforcing the obligations arising under the TCA between state PSCs and the federal courts, leaving no role for state courts. Before a federal court can become involved, the PSCs are tasked with mediating and arbitrating between tele-

communications companies when their private negotiations fail to reach an interconnection agreement. 47 U.S.C. § 252(b). State PSCs are also charged with making the initial "determination" of any disputes between parties regarding the interpretation and enforcement of interconnection agreements. 47 U.S.C. § 252(e)(6); *see Southwestern Bell Tel. Co. v. Connect Communications. Corp.*, 225 F.3d 942, 946 (8th Cir.2000) ("The Act provides that an interconnection agreement, reached either by negotiation or arbitration, must be submitted to the state commission for approval . . . . This grant of power to state commissions necessarily includes the power to enforce the interconnection agreement."). The TCA expressly limits jurisdiction of a federal district court to cases brought by a "party aggrieved" as a result of an unfavorable "determination" by the state PSC. 47 U.S.C. § 252(e)(6).

Applying this framework, several courts have recognized the limited jurisdiction of federal district courts under the TCA. Although no court has addressed whether the TCA strips federal district courts of diversity jurisdiction, several courts have determined that the TCA strips federal district courts of their federal question jurisdiction as to questions that have not been presented first to a state PSC.[6] All of the courts that have considered the federal question issue have held that state PSCs have the principal role in determining claims that arise under the TCA. *Southwestern Bell Tel. Co. v. Pub. Util.*

47 U.S.C. § 252(e)(6).

**5.** *See Intermedia Communications, Inc. v. Bellsouth Telecomms., Inc.*, 173 F.Supp.2d 1282, 1287 (M.D.Fl.2000) (dismissing TCA claims because 47 U.S.C. § 252(e)(6) requires that TCA claims first be presented to a state PSC and reserving ruling as to state law claims based on breach of contract and tortious interference theories until parties

briefed issue of whether or not federal district court had diversity jurisdiction).

**6.** Federal question jurisdiction is determined by statute, which provides:

§ 1331. Federal question.
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

*Comm'n,* 208 F.3d 475, 480 (5th Cir.2000) (stating that "the FCC plainly expects state commissions to decide intermediation and enforcement disputes that arise after the approval procedures are complete"); *see Intermedia Communications, Inc. v. Bellsouth Telecomms., Inc.,* 173 F.Supp.2d 1282, 1287 (M.D.Fl.2000) (holding that parties "must first bring their claims of violations of § 251 to the state PSC before a federal court has jurisdiction over the matter").[7] It is clear to this Court that absent

a prior determination of the issue by the state PSC, no federal court jurisdiction exists.

■ Furthermore, this Court does not believe that Contact can avoid dismissal simply by characterizing its TCA claims as state law violations.[8] Contact alleges that Qwest refused to provide payment for reciprocal compensation properly due under the contract.[9] The TCA requires that the parties provide for reciprocal compensa-

---

28 U.S.C. § 1331.

7. *See also Atlantic Alliance Telecomms., Inc. v. Bell Atlantic,* 2000 U.S. Dist. LEXIS 19649 (S.D.N.Y.2000) (finding that the federal statutory scheme set forth under 47 U.S.C. § 252(e) limited the role of the federal courts to appellate review of state commission decision interpreting interconnection agreements); *Bell Atlantic–Virginia, Inc. v. World-Com Techs. of Virginia, Inc.,* 70 F.Supp.2d 620, 625–26 (E.D.Va.1999) (dismissing a breach of contract claim where parties disputed whether local calls to ISPs constituted local traffic subject to reciprocal compensation under the terms of their interconnection agreement because the Virginia Commission did not make a determination regarding the interpretation of the claims and stating "the [TCA] was designed to allow the state commission to make the first determination"); *AT & T Communications of Ohio v. Ohio Bell Tel. Co.,* 29 F.Supp.2d 855, 856 (S.D.Ohio 1998) ("The statutory scheme does not permit this Court to review disputes arising out of interconnections agreements not previously subject to action by a state commission."); *AT&T Communications of Illinois, Inc. v. Illinois Bell Tel. Co.,* 1998 WL 525437, *5 (N.D.Ill., Aug.18, 1998) (refusing to review issues that were not first submitted to the state commission for a determination); *Indiana Bell Tel. Co., Inc. v. McCarty,* 30 F.Supp.2d 1100, 1104 (S.D.Ind.1998) (stating that the Telecommunications Act "was designed to allow the state commission to make the first determination on issues prior to judicial review"); *GTE North Inc. v. McCarty,* 978 F.Supp. 827, 836 (N.D.Ind.1997) ("The language, structure, and purpose of the Act make it fairly discernible that Congress intended to preclude judicial review until a state commission either approves or rejects a final interconnection agreement.").

8. Contact's attempt to recast its TCA claims as state law claims appears to be somewhat unique. This Court has been unable to find any decisions where a party in Contact's position successfully attempted to redress similar TCA claims under state law. To the contrary, a survey of the many cases regarding reciprocal compensation and other interpretation issues reveals that parties involved in similar disputes have always brought such claims first before the state PSCs.

There are many cases relating to the issue of reciprocal compensation. Most of these cases could easily have been brought as state law breach of contract claims or state declaratory judgment claims because the issue in these cases is the interpretation of interconnection agreements reached by the parties. Yet, uniformly, these cases have been litigated first before state PSCs. *See, e.g., Southwestern Bell Tel. Co. v. Connect Communications Co.,* 225 F.3d 942, 943–44 (8th Cir.2000); *MCI Telecomms. Corp. v. Illinois Bell Tel. Co.,* 222 F.3d 323, 325–27 (7th Cir.2000); *Southwestern Bell Tel. v. Pub. Util. Comm'n of Texas,* 208 F.3d 475, 478 (5th Cir.2000).

9. Both Interconnection Agreements provide for reciprocal compensation which is the contracted amount of compensation a telecommunications company, whose customer originates a call, pays to a company for terminating the call to that company's customer. (Compl.¶ 8.) Contact has made demand for payment of reciprocal compensation pursuant to the Interconnection Agreements for calls terminated by Contact. (Compl.¶ 9.) Qwest has defaulted in this payment and refused to pay for said services provided by Contact. (Compl.¶ 10.)

tion in the Interconnection Agreements.[10] Thus, the predicate acts underlying the state breach of contract claims all arise out of purported violations of Qwest's obligations under the TCA. The jurisdiction of this Court under the TCA does not change whether Contact casts its claims under federal law as violations of the 1996 Act or characterizes them as state law claims. To the extent that Contact's claims rely on Qwest's alleged breach of the Interconnection Agreements as an essential element of its causes of action, the Court finds that these claims too are subject to the state PSC's exclusive jurisdiction and should be dismissed on that basis.

Moreover, other cases arising under the TCA have raised both state and federal issues. Yet, uniformly such cases have been brought first before state PSCs. *See, e.g., Southwestern Bell Tel. Co. v. Brooks Fiber Comms. of Oklahoma, Inc.*, 235 F.3d 493 (10th Cir.2000) (finding that federal jurisdiction over PSC determinations was exclusive, thus, state court did not have jurisdiction to review PSC determination of state law and implicitly recognizing that both state and federal claims were properly brought first before the PSC).[11] Thus, Contact may not validly argue that PSCs do not have the authority to hear state law claims.

Although plaintiff argues that the Court's position is inconsistent with *Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, where the Supreme Court ruled that federal district courts may review state commission decisions under 47 U.S.C. § 252(e) pursuant to their general federal question jurisdiction, this Court finds that no inconsistency exists. 122 S.Ct. at 1758. In *Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, the Supreme Court held that 47 U.S.C. § 252(e)(6) does not divest the district courts of their authority under 28 U.S.C. § 1331 to review a state PSC's order for compliance with federal law. *Id.* It did not hold that federal district courts have jurisdiction to decide such questions in the first instance, prior to consideration and decision by either a state commission or the FCC.

**B. A Federal District Court Cannot Exercise Diversity Jurisdiction Over TCA Claims Because the TCA Deprives State Courts of Any Jurisdiction.**

■ "A district court is prohibited from exercising subject matter jurisdiction when it is found that Congress intended to preclude review." *GTE North Inc. v. McCarty*, 978 F.Supp. 827, 833 (N.D.Ind.1997). Under the TCA, as described above, Con-

---

10. When a new entrant seeks access to a market, the incumbent LEC must "provide . . . interconnection with" the incumbent's existing network and the carriers must then establish "reciprocal compensation arrangements" for transporting and terminating the calls placed by each others' customers. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 122 S.Ct. at 1756; 47 U.S.C. § 251(c)(2), § 251(b)(5).

11. *Indiana Bell Tel. Co. v. McCarty*, 30 F.Supp.2d at 1104 (dismissing AT & T's counterclaims regarding the interpretation of the parties' obligations under the interconnection agreement because they could not be present-

ed to a federal district court until they were first resolved by an appropriate state PSC); *AT&T Communications v. Illinois Bell Tel. Co.*, 1998 WL 525437 at *5 (dismissing claims relating to the interpretation of an interconnection agreement for lack of subject matter jurisdiction because the claims had not been first presented to the state PSC). There is nothing in any of these opinions that can be read to suggest that the result would have been any different had the request for an interpretation of the contract been brought within the context of a state breach of contract claim instead of a TCA claim.

gress explicitly limited federal court jurisdiction to the review of determinations made by state PSCs. Significantly, Congress also explicitly deprived state courts of any jurisdiction to resolve claims brought under the TCA. 47 U.S.C. § 252(e)(4).[12] A federal court sitting in diversity is an adjunct of the state courts and, as such, an action that cannot be maintained in state court cannot be maintained by a federal court. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (holding that because a federal court exercising diversity jurisdiction is "in effect, only another court of the State, it cannot afford a recovery if the right to recover is made unavailable by the State"). The Court finds that the elimination by Congress of state court jurisdiction over TCA claims is dispositive. Because Contact's state law claims are entirely based on the parties' duties and responsibilities under the TCA, neither a state court, nor a federal court with diversity jurisdiction, can consider such claims in the first instance. In this case, there are simply no valid claims over which this Court could exercise diversity jurisdiction.

## V. CONCLUSION

Although the commission made a determination when it approved the agreement, Contact's claims do not address that determination or any other determination made by the commission. Rather, Contact requests that the Court make a determination of the proper interpretation of the negotiated terms. These terms have not been interpreted by the Commission.

The Courts have consistently held that "[t]he statutory scheme [of the TCA] does not permit [a federal district court] to review disputes arising out of interconnection agreements not previously subject to action by a state commission". *Indiana Bell Tel. Co., Inc. v. McCarty*, 30 F.Supp.2d at 1104. This Court finds that the TCA is a comprehensive regulatory scheme that places the initial responsibility of resolving disputes with the PSCs. The assertion that this Court has initial jurisdiction pursuant to its diversity jurisdiction over such disputes is at odds with the cooperative federalism scheme created by Congress. In order to be ripe for review for this court, the plaintiff must be "aggrieved" by the state commission's determination. *AT&T Communications of Illinois, Inc. v. Illinois Bell Tel. Co.*, 1998 WL 525437, at *5. Circumventing the commission would jeopardize the entire system of review established by the Act. *Indiana Bell Tel. Co., Inc. v. McCarty*, 30 F.Supp.2d at 1104. Therefore, consistent with the language and the purpose of the Telecommunications Act, this Court holds that it lacks subject matter jurisdiction over Contact's claims. Having made this determination, the Court may not address the other grounds and issues set forth by the parties.

It is hereby

**ORDERED** that defendant's motion to dismiss is **GRANTED**.

---

**12.** The statute mandates that: "No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." 47 U.S.C. § 252(e)(4).